UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| MELISSA MAHER, | ) | |
| | ) | CASE NO. 4:16 CV 00570 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | BRIEF IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION FOR |
| IOWA STATE UNIVERSITY, | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................3

INTRODUCTION .................................................................................................5

ARGUMENT ........................................................................................................7

      I.     Summary Judgment Should be Denied.................................................7

            A.  The Action was Filed within the Applicable Statute of Limitations .............8

            B.  The Facts Establish a Title IX Claim ..........................................11

      II.    Plaintiff Withdraws Its First Cause of Action......................................15

CONCLUSION...................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page**

*Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir 1979)......................................11

*Bay Area Laundry and Dry Cleaning Pension Trust Fund vs.
Ferbar Corporation of California,* 522 U.S. 192, 201, 118 S. Ct. 542 (1997)...........................8

*Davis ex rel. LaShonda D. v. Monroe County Board of Education*,
526 U.S. 629, 650, 119 S.Ct. 1661 (1999)...............................................................................7, 12

*Doe ex. Rel Doe v. Derby Board of Education*,
451 F.Supp.2d 438, 444 (D.Conn. 2006)....................................................................................13

*Graham County Soil and Water Conservation District vs.
United States ex rel Wilson*, 545 U.S. 409, 418, 125 S. Ct. 2444 (2005) ...................................8

*Green vs. Brennan*, 136 S. Ct. 1769 (2016)...............................................................................8

*Kelly v. Yale Univ.* No 3:01-CV-1591, 2003 WL 1563424 at *3
(D.Conn. March 26, 2003)...........................................................................................................13

*King-White v. Humble Independent School District*,
803 F.3d 754, 762 (5th Cir 2015) ................................................................................................8

*K.T. v. Culver-Stockton College*, 865 F.3d 1054, 1057 (8th Cir 2017) ...................7, 11, 12, 14, 15

*Ostrandaer v. Duggan*, 341 F.3d 745, 750 (8th Cir 2003) ......................................................7, 12

*Matsushita Electric Industrial Co, Ltd v. Zenith Radio Corporation*,
475 U.S. 574, 587-8, 106 S.Ct. 1348 (1986) .........................................................................15, 16

*Samuelson v. Oregon State University*, 162 F.Supp3d 1123 (D. OR 2016) ...............................8

*Stanley v. Trustees of the California State University*, 433 F.3d 1129 (9th Cir. 2006).............11

*Takala v. Regents of the University of California*,
1:15-CV-04418, 2015 WL 6755190 (C.D. Cal. 2015) ...............................................................14

*United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962) ...................................16

*Walker v. Barrett*, 650 F.3d 1190, (8th Cir 2011)......................................................................8

*Williams v. Board of Regent of the University System of Georgia et al*,

477 F. 3d 1282 (11th Circuit 2007) .........................................................................................13

**Statutory Authorities**

Federal Rule of Civil Procedure 56(a) ...................................................................................15

Iowa Code 614.1 ....................................................................................................................11

**Other Authorities**

*Revised Sexual Harassment Guidance: Harassment of Students by
School Employees, Other Students, Or Third Parties*,
U.S. Department of Education Office of Civil Rights, page 16, January 2001 .........................10

*Random House Dictionary of the English Language*, 1415 (1966)...........................................12

COMES NOW Plaintiff, Melissa Maher, by counsel and in opposition to Defendant's Motion for Summary Judgment states as follows:

**<u>INTRODUCTION</u>**

Iowa State University is no stranger to sexual assaults on campus.  In 2012 there were nine reported forcible sex offenses on campus.  In 2013 there were fourteen reported forcible sex offenses on campus.  In 2014 there were eleven reported forcible sex offenses on campus. Unfortunately, Melissa Maher made one of those reports in 2014. On the night of March 29-30, 2014 Maher was at a party in Fredrickson Court with some friends. Some of them she knew, some of them she did not, including Patrick Whetstone who she met that night. At the end of the night, Maher was feeling sick, so it was decided she would sleep on the sofa in the common area. Whetstone, claiming that he had a friend who once had gotten sick from drinking too much said that he would watch her. One of the residents in the apartment said Whetstone should sleep on the couch in his room. Whetstone insisted he would care for Maher. The residents went to bed with Maher and Whetstone alone in the living room. Maher was on the couch and woke to discover Whetstone having intercourse with her. At no time had Maher consented to Whetstone's acts.

The following morning, Maher reported the rape to Iowa State University Police. She was taken to the hospital and examined. Later that week she moved out of her dorm and left Iowa State University for the semester. Once home she decided to drop all but one of her classes. Iowa State University did not follow through with her request to drop the classes and she received notice she received failing grades in the classes that were not dropped.

Maher returned to Iowa State University in the Fall 2014 and moved into her new apartment in Frederiksen Court.  In the process she discovered that Whetstone was living in Building 53 right next to her in Building 52. Maher, Kipp Van Dyke, Dean Pamela Anthony, Kerry Blodgett, Kevin

5

Maher and Julie Maher met to discuss a change in housing. Melissa was offered an option to move into a converted den room with multiple other students or temporary housing in the Union. Maher was uncomfortable with strangers and didn't want to move into a room with multiple other people. Maher did not want a temporary solution. She also did not have a meal plan.

Seeing Whetstone was a problem for Maher. When Maher saw Whetstone from her window attending a get together at Frederiksen Court she was forced to stay in her room. At other times she saw him it would trigger PTSD episodes where Maher would relive the rape. She estimated she saw him over 20 times at the bus stop, at the store, and walking to class. Maher saw Whetstone at the gym and was forced to leave.

On September 19, 2014, the University completed its investigation and found that Whetstone had engaged in nonconsensual sex with Maher. The Office of Equal Opportunity Director, Robinette Kelley informed Maher of her findings. Kelley had spoken to Dean Anthony and Miles Lackey saying she felt Whetstone should be removed. Even after Kelley found that Whetstone had engaged in non-consensual sex with Maher, Dean Anthony did not make a change to Whetstone's housing. Maher withdrew from Iowa State University while Whetstone stayed in his apartment and completed the semester. Whetstone transferred the following semester to the University of Northern Iowa.

Iowa State University glosses over the major issue in this case. When Iowa State University was confronted with a difficult housing situation, they offered no similar alternatives to Maher's housing and ultimately allowed the perpetrator of a sexual offense against her to remain in a building 150 feet away, even after Iowa State University had determined that Whetstone had sexually assaulted Maher, in violation of the University's Code of Conduct. As a result, Maher was only offered to uproot herself and move into less favorable housing without her roommate.

Maher did not choose the conduct Whetstone forced on her. Whetstone violated her, and Iowa State University chose to favor Whetstone, even after a full investigation lead it to conclude that Whetstone had violated her and violated University policy. Maher had to make the difficult decision to move to less favorable housing where she would have had to pay additional costs for a meal plan or leave the University, while Whetstone remained in the same housing. Whetstone completed his semester at Iowa State University, then transferred to the University of Northern Iowa while Maher lost the opportunity to even continue at Iowa State University because she could not stay in the housing offered and complete her studies.

## ARGUMENT

I.   SUMMARY JUDGMENT SHOULD BE DENIED.

In order to prove Iowa State University is liable to Melissa Maher for damages for violating the provisions of Title IX, Plaintiff must show that the University was "(1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." *K.T. v. Culver-Stockton College*, 865 F.3d 1054, 1057 (8th Cir 2017), quoting, *Ostrandaer v. Duggan*, 341 U.S. 745, 750 (8th Cir 2003). The resulting discrimination must be "so severe, pervasive and objectively offensive that it can be said to deprive the victim of access to the educational opportunities and benefits provided by the school." *Culver-Stockton College*, 865 F.3d at 1057, quoting, *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 650, 119 S.Ct. 1661 (1999). Iowa State University admitted in its answer to Plaintiff's Petition that it is a recipient of Title IX funds and thus would be subject to Title IX's provisions.

Plaintiff has never alleged that Iowa State University had reason to know that the rape occurred. However, Iowa State University's response, which protected the perpetrator, Patrick Whetstone, at Melissa Maher's expense shows deliberate indifference that denied Maher access to

educational opportunities and benefits. Iowa State University knew that Maher had been raped and after an exhaustive investigation, involving fifteen interviews, reached that conclusion. However, after concluding that Maher had been raped by Whetstone, the University still refused to make a change in housing to allow Maher to continue her education unimpeded by the presence of Whetstone residing just 150 feet away from her. Because the cause of action accrued within the two-year period prior to the time suit was filed, the statute of limitations does not bar the action.

A.  THE ACTION WAS FILED WITHIN THE APPLICABLE STATUTE OF LIMITATIONS

Iowa State University relies on a number of cases where the statute of limitations had long passed for its assertion that the statute of limitations applies to bar this action. In *Walker v. Barrett*, 650 F.3d 1190, (8th Cir 2011) the action accrued in 1992, when the plaintiff was a fifteen-year-old minor but the action was filed in 2008. Id. 650 F.3d at 1201. Similarly, the acts in other cases occurred some 15 years before suit was filed and four years before suit was filed. *Samuelson v. Oregon State University*, 162 F.Supp3d 1123 (D. OR 2016), *King-White v. Humble Independent School District*, 803 F.3d 754, 762 (5th Cir 2015). Iowa State University then cites to the Eighth Circuit's discussion of Walker's Missouri State law claims for the claim that standard should be when there are sufficient facts to place a "reasonably prudent person on notice of a potentially actionable injury." *Walker*, 650 F.3d at 1205. That is not the standard utilized by Federal Courts.

The U.S. Supreme Court holds that the standard rule for a limitations period commences "when the Plaintiff has a complete and present cause of action." *Green vs. Brennan*, 136 S. Ct. 1769 (2016) quoting, *Graham County Soil and Water Conservation District vs. United States ex rel Wilson*, 545 U.S. 409, 418, 125 S. Ct. 2444 (2005).  In any case a "cause of action does not become complete and present for limitations purposes until the Plaintiff can file suit and obtain relief."  *Bay Area Laundry and Dry Cleaning Pension Trust Fund vs. Ferbar Corporation of*

*California,* 522 U.S. 192, 201, 118 S. Ct. 542 (1997).  Iowa State University argues that the cause

of action accrues as soon as there are any facts which could lead to a cause of action.  That is not

the rule annunciated by the U.S. Supreme Court.  In fact, Iowa State University's argument belies

its position because the University argues that under no set of facts can Plaintiff recover in this

case.  Consequently, no cause of action ever accrued because there are, in their opinion, no facts

under which the Plaintiff can show a complete and present cause of action.  However, Iowa State

University ignores the most egregious facts.

Some of Iowa State University's actions lead to no tangible injury and do not by themselves

show deliberate indifference.  For instance, Iowa State University bungled the dropping of classes.

Iowa State University was able to correct the problems that it created with the annoyance of having

sent letters placing Maher on academic probation and threatening her scholarships.  While the

mishap shows disorganization and lack of attention to detail, Iowa State University is correct in

saying that it did not deny an educational opportunity to the Plaintiff by failing to drop the classes

at the correct time because it was able to correct the error.  The mistake is more illustrative of the

kinds of things that Iowa State University was doing because it lacked proper organization, the

ability to respond to circumstances and to follow up.  The University is correct that the failure to

do things properly is not, in and of itself, deliberate indifference to the Plaintiff's rights that denied

her an educational opportunity.

The real question is when did Iowa State University's actions become so egregious as to

create a complete and present cause of action.  The pivotal moment revolves around the housing.

The cause of action became complete and present when Iowa State University failed to provide

similar housing to the Plaintiff while the perpetrator, Whetstone, remained in his apartment and

completed his semester unabated, even once Iowa State University found he had engaged in sexual

misconduct. The University's argument that a No Contact Order resolves all problems ignores the effects the perpetrator had on Maher. It assumes that sexual harassment and its adverse effects only occur when the perpetrator directly contacts the victim.

In its 2001 guidance, the U.S. Department of Education Office of Civil Rights stated that "appropriate steps should be taken to end the harassment and in some cases it may be appropriate… to further separate the harassed student and the harasser, e.g. by changing housing assignments or directing the harasser to have no further contact with the harassed student. Responsive measures of this type should be designed to minimize as much as possible the burden on the student who was harassed." *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, Or Third Parties*, U.S. Department of Education Office of Civil Rights, page 16, January 2001. Iowa State University takes the position that a no contact order resolves the harassment issue, not taking into account the effect of the actual assault and that forcing the harassed or assaulted student to simply avoid the other party does not alleviate the burden on the victim and it does not remove the stigma and the effects of the actual assault.

With the two students in such close proximity, Melissa Maher was a prisoner in her own room during social activities that Whetstone continued to participate in. Maher suffered PTSD episodes after seeing the perpetrator of the crime. She was fearful that he would still repeat the acts he had carefully orchestrated. The University fails to see that after its own findings conclude that Whetstone arranged things so that he would "take care of" Maher when in fact he simply situated himself to get her alone so that he could take advantage of her, the University insisted that Whetstone had rights and that they were not going to make any change. Maher appropriately waited while the University completed its investigation and at the end of that investigation, the University concluded that Whetstone had engaged in non-consensual intercourse with Maher.

Instead of minimizing the burden on the victim, the University left Maher in close proximity to the abuser and refused to take any action, even when Iowa State University understood that Whetstone had raped Maher. These are egregious facts that show deliberate indifference. Maher was denied the educational opportunities that were provided to her harasser. Her harasser was allowed to stay in the same room, continue his education at Iowa State University through the semester, and then transfer out of Iowa State University to another state school, possibly subjecting others at another school to further misconduct. A complete and present cause of action accrued in this case on September 19, 2014 when Iowa State University allowed Whetstone to stay in his apartment while Maher suffered from his presence and couldn't complete her studies.

Applying Iowa's two-year statute of limitations means that an action needed to be filed by September 19, 2016. Iowa Code 614.1. The original action was filed in Iowa District Court in Story County on September 9, 2016 within that time period. Iowa State University relies heavily on *Stanley v. Trustees of the California State University*, 433 F.3d 1129 (9th Cir. 2006) for the proposition that the claim is time barred. However, the court there held that the proper focus is upon the time of the discriminatory acts. *Id*. 433 F.3d at 1136, quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir 1979). Here the actions of Iowa State University, and its indifference to the resulting hostile environment, occurred within the two-year time period when it concluded that Whetstone had raped Maher but took no further action to allow Maher to live on campus without the fear of continually encountering Whetstone while he was living in the building next to her.

## B.  THE FACTS ESTABLISH A TITLE IX CLAIM

Iowa State University is liable for damages under Title IX if the University was "(1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." *K.T.*

*v. Culver-Stockton College*, 865 F.3d 1054, 1057 (8th Cir 2017), quoting, *Ostrandaer v. Duggan*, 341 F.3d 745, 750 (8th Cir 2003). The resulting discrimination must be "so severe, pervasive and objectively offensive that is can be said to deprive the victim of access to the educational opportunities and benefits provided by the school." *Culver-Stockton College*, 865 F.3d at 1057, quoting, *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 650, 119 S.Ct. 1661(1999). Deliberate indifference must, "at a minimum, cause [students] to undergo harassment or make them liable or vulnerable to it." *Id*. In *Davis*, the United States Supreme Court defined subject as "to cause to undergo the action of something specified, expose or to make liable or vulnerable; lay open, expose." *Davis*, 526 U.S. at 645 quoting *Random House Dictionary of the English Language*, 1415 (1966).

In this case Maher was vulnerable to harassment when she saw Whetstone on a regular basis – at least twice a week – when she attended classes, went to the bus, went to the gym or saw him leaving or entering the adjacent building. Seeing Whetstone triggered PTSD episodes which resulted in her missing classes and being unable to focus on her studies. Shortly after returning to Iowa State University she met with Dean Anthony and Kipp Van Dyke to discuss options. The alternative housing the University offered was either temporary or required here to obtain a meal plan and live in a room full of strangers. The University held multiple meetings on the housing problem ultimately determining it would make no changes.

On September 19, 2014 the University issued its finding after a thorough investigation involving interviews of fifteen students over a course of over four months. The investigation concluded that Whetstone had sexually assaulted Maher. Iowa State University still refused to move Whetstone. Whetstone remained a student and completed the semester at Iowa State

University. Maher, unable to complete her classes because of the effects of regularly seeing Whetstone, withdrew when she realized Iowa State University would not make a change.

Courts have recognized the right to seek damages under Title IX in similar circumstances. In *Williams v. Board of Regent of the University System of Georgia et al*, 477 F. 3d 1282 (11th Circuit 2007) Williams withdrew from the University after the University "failed to take any precautions that would prevent future attacks from Cole, Thomas, Brandon Williams, or like-minded hooligans should Williams have decided to return, either by, for example, removing from student housing or suspending the alleged assailants, or implementing a more protective sexual harassment policy to deal with future incidents." *Id*. at 1297. The Court found that leaving the victim vulnerable to future attacks was pervasive discrimination and barred access to educational opportunities. *Id*. at 1298.

In another case, although there was no evidence that the victim was harassed after the incident, the victim frequently saw the perpetrator and was left open to the constant potential to interactions with him. *Doe ex. Rel Doe v. Derby Board of Education*, 451 F.Supp.2d 438, 444 (D.Conn. 2006). Evidence showed that seeing the perpetrator was very upsetting and made the school year hard. *Id*. The Court quoted with approval language from a similar case finding that although an attacker did not harass the victim after the assault, his "presence on campus and the accompanying risk that she might encounter him created a hostile environment that effectively deprived her of the educational opportunities or benefits provided by the school." *Derby Board*, 451 F.Supp.3d at 444, quoting *Kelly v. Yale Univ.* No 3:01-CV-1591, 2003 WL 1563424 at *3 (D.Conn. March 26, 2003). In *Derby* the parents and child never put the school on notice of the problem with the interaction but the Court, in denying Summary Judgment, held that the circumstances, "including the assault, Sally Doe's youth and her proximity to Porto, Jr. at school

– a jury could conclude that the Board should have known, even absent a specific complaint from Sally Doe or her father, that this was a particularly, risky situation necessitating its attention." *Derby Board*, 451 F.Supp.3d at 448. See also *Takala v. Regents of the University of California*, 1:15-CV-04418, 2015 WL 6755190 (C.D. Cal. 2015).

In this case, Maher did raise her concerns that living in close proximity to Whetstone was a problem for her and disrupted her studies. After the University found that Whetstone had raped Maher, the University took no action to make Maher comfortable on campus or to abate the harassing presence of Whetstone on campus. She had not asked that the University suspend him or immediately expel him, she simply asked that he be moved, but the University refused to take action. As a result, Maher withdrew from school and was unable to continue her studies which set her back a number of years. While the University's decision to complete its investigation before taking any action against Whetstone might be arguably reasonable, once the University agreed he had raped her, there was no reason not to take further action to protect Maher from further harassment and a hostile environment. There are sufficient facts to support a jury finding that the University's failure to move Whetstone was deliberately indifferent to Maher and was so severe, pervasive and objectively offensive that it deprived Maher access to the educational opportunities and benefits provided by the school.

Iowa State argues that *Culver-Stockton College* is controlling law in the Eighth Circuit. But *Culver-Stockton College* did not address these specific facts. In *Culver-Stockton College* the victim was a non-student visiting the college when she was served alcohol at a party before she was physically and sexually assaulted. *Culver-Stockton College*, 865 F.3d at 1055.  The facts in *Culver-Stockton College* did not lend themselves to a direct ruling on the issues in this case because

the plaintiff in *Culver-Stockton College* was not a student, was subject only to a single incident of assault for which the University had no prior knowledge.

In this case, Maher was actively on Iowa State University's campus after the assault trying to continue her education. She regularly encountered Whetstone and those encounters caused PTSD episodes that kept her from focusing on her studies and from attending classes. The Dean of Students had been told about Maher's problems with the housing situation but chose to make no changes, even after the University had found that Whetstone had raped Maher. The University retained the right in its housing contract to move students. It had the authority and the right to move Whetstone. It deliberately chose not to move Whetstone, even though it knew that the proximity of Maher to Whetstone was upsetting to her, even though the University had found Whetstone had violated Maher and later charged him with violating the University's Code of Conduct and expelled him. As a result, Whetstone continued his education and Maher withdrew because she could not live in such close proximity to the rapist. Iowa State University's response was deliberately indifferent to Maher's situation, discriminated in favor of the perpetrator of the crime over the victim and the result was so severe, pervasive and objectively offensive that it deprived the victim of access to the educational opportunities and benefits provided by Iowa State University. Facts support the cause of action and summary judgment should be denied.

II.   PLAINTIFF WITHDRAWS ITS FIRST CAUSE OF ACTION

## CONCLUSION

The court may grant Summary Judgment if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co, Ltd v.*

*Zenith Radio Corporation*, 475 U.S. 574, 587-8, 106 S.Ct. 1348 (1986), quoting, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962). Iowa State University's actions became severe, pervasive and objectively offensive when it determined that Whetstone raped Maher but made no change in housing to allow Maher to continue her education without the ongoing fear and PTSD episodes from seeing Whetstone on the way to classes and around the housing complex. Iowa State University was deliberately indifferent to Maher, discriminated against her and had complete control of the housing assignments. Iowa State University's motion for summary judgment should be denied.

Respectfully submitted,

NEWBROUGH LAW FIRM, LLP

By  /s/ Andrew J. Zbaracki
    Andrew J. Zbaracki                AT0008649
612 Kellogg Ave., P.O. Box 847
Ames, Iowa  50010
Telephone:     (515) 232-1761
Fax:             (515) 232-8962
E-mail:        andrew@newbroughlaw.com
ATTORNEYS FOR PLAINTIFF

**Certificate of Service**

    I certify that on December 20, 2017 a copy of the foregoing was filed electronically with the Clerk of this Court which will serve notification on Defendant by the court ECF system.

By: /s/Andrew J. Zbaracki
      Andrew J. Zbaracki