IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MELISSA MAHER, | 4:16-cv-570-HCA |
| Plaintiff, | |
| vs. | |
| IOWA STATE UNIVERSITY, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

Defendant Iowa State University ("ISU") filed a Motion for Summary Judgment. ECF No. [40]. Plaintiff Melissa Maher ("Maher") resisted. ECF No. [43]. ISU replied. ECF No. [46]. The Court held a hearing on the Motion on January 11, 2018. The Court considers the Motion fully submitted on the parties' briefs and oral arguments. The Court **grants** ISU's Motion for Summary Judgment. ECF No. [40].

## I. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). At this stage, the Court's function is not to determine credibility, weigh the evidence, or determine the truth of the matter. *Id.* at 249, 255. Instead, the Court views the record in the light most favorable to the nonmoving party and determines whether there is a genuine issue for trial. *Id.*

## II. FACTS

The facts in this case are primarily undisputed. The Court bases the factual description below on the undisputed facts and the facts as viewed in the light most favorable to Maher.

Maher is a former ISU student. Another ISU student sexually assaulted Maher in ISU housing on March 30, 2014. Maher reported her sexual assault to the ISU police department, who sent Officer Deb Larkin to Maher's location within 15 to 20 minutes. Officer Larkin took Maher, accompanied by her roommate, to the hospital for a rape examination. Officer Larkin also arranged for a sexual assault advocate from the Assault Care Center Extending Shelter & Support ("ACCESS") to meet them at the hospital. ACCESS is a private organization that ISU partially funds that provides support to sexual assault victims. At the hospital, Officer Larkin and the ACCESS advocate informed Maher that the criminal investigation and prosecution would be "hard" for her. Maher declined to identify the perpetrator of her sexual assault at that time. Hospital staff performed the rape examination and Officer Larkin took Maher and her roommate home.

The day after the assault, Maher's mother met with Officer Larkin and the ACCESS advocate to discuss the victim assistance options available to Maher and the criminal process. The group had a similar conversation again the next day, but Maher's father (participating by phone), Kipp Van Dyke (a representative from ISU's Office of Student Assistance), and Sara Kellogg (a representation from ISU's Office of Student Conduct) joined. Maher's mother had approximately a dozen meetings with ISU staff during that week. On April 3, 2014, Van Dyke emailed Maher,

informed her that she could reach out to him for victim assistance, and advised her that counseling services were available.

Van Dyke then met with Maher and her parents to discuss the process of withdrawing from classes and leaving ISU for the semester. Maher checked out of her dorm room that day. Van Dyke emailed an ISU housing employee and advocated that ISU not penalize Maher for cancelling her contract early. ISU did not penalize Maher.

In April 2014, Maher emailed Van Dyke and inquired about dropping out of four of her five classes and ISU reimbursing her for tuition. Van Dyke responded and carbon copied Jan Jacobson. Jacobson responded that ISU usually only gave refunds in period three—after the tenth week of classes—if a student withdrew from all classes. Jacobson suggested that Maher completely withdraw and Van Dyke instructed Maher to discuss the issue with Jacobson. On April 21 and May 13, Van Dyke emailed Maher to remind her that he was available to discuss her options, including pursuing charges through ISU or judicial processes.

On May 16, 2014, ISU mailed Maher a financial aid warning because she had failed to make satisfactory academic progress in her courses. On May 29, Maher met with Van Dyke about her class drops. Maher had received Fs for the four courses she thought she dropped. Van Dyke emailed other ISU staff, who confirmed that Maher had not been dropped from the courses. Van Dyke and Maher clarified the issue with the other ISU staff, ISU retroactively dropped the courses, and ISU removed the Fs from Maher's transcript. This scheduling issue did not cost Maher any financial aid or scholarships.

On May 29, 2014, Maher identified the man who attacked her, Patrick Whetstone. Officer Larkin and Robinette Kelley, ISU's Equal Opportunity Director, interviewed her. Kelley advised Maher that Maher could request a no-contact order prohibiting Whetstone from interacting with

Maher in any way, which Maher requested and received. Kelley explained the ISU administrative process and the criminal adjudication process; she told Maher that the investigation process could take up to six months. Kelley also told Maher that ISU could suspend Whetstone, but only if he posed a continued danger to Maher or others. ISU did not suspend Whetstone because the two had not had any contact for 60 days.

Over the next four months, Kelley and her investigator interviewed 15 individuals. By the time Maher identified her assailant, many ISU students had left campus for the summer. Kelley waited until these students returned to campus to interview them. During this time, Kelley responded to Maher's and her parents' requests for updates on the investigation. The ISU Police Department generally conducts its own, separate investigation and refers those results to the Story County Attorney to determine whether to prosecute. The ISU Police Department also waited until students returned to campus in the fall before investigating Maher's sexual assault.

In August 2014, when Maher returned to campus, she moved in to Frederiksen Court. Maher and her roommate had picked this housing assignment in February 2014, before her assault. Whetstone lived in the building adjacent to Maher. Maher saw Whetstone on campus approximately two times a week, including at the bus stop, walking to class, going to the store, and going to the gym.

In mid-August, Maher's parents contacted Van Dyke about her apartment being close to Whetstone's apartment. Van Dyke called Maher and asked whether she wanted to move, but she indicated that she had no interest in moving. On August 20, 2014, Maher, her parents, her roommate, Van Dyke, and Pamela Anthony (ISU's Dean of Students) met to discuss her housing options. ISU was overcapacity for the fall 2014 semester. There were no two-bedroom apartments available. ISU told them it could place Maher in a single-person emergency room or Maher and

her roommate in a converted den with several other women or in the Memorial Union Hotel temporarily.[1] Maher declined these options.[2] She preferred that ISU move Whetstone. Anthony informed Maher that the ALJ had not found that Whetstone violated the Code of Student Conduct yet, so it could not move him.[3]

On September 19, 2014, Kelley produced a report that summarized the interviews and her findings. Kelley concluded that Whetstone sexually assaulted Maher. ISU's Office of Student Conduct charged Whetstone with violating the Code of Student Conduct. After ISU charges a student with sexual assault, he may choose to have that charge decided by an ISU conduct officer, an ISU hearing board, or a formal Iowa Administrative Procedure Act ("IAPA") hearing with an administrative law judge ("ALJ"). Whetstone chose the IAPA process.

Later, Maher's father informed Van Dyke that Maher was stressed and had missed several classes. Maher's father asked Van Dyke to contact Maher's professors; Van Dyke sent Maher's professors non-specific emails indicating that Maher was experiencing a stressful situation. Maher withdrew from ISU around September 25, 2014.

In January 2015, the ISU Police Department charged Whetstone with third-degree sexual abuse, a class "C" felony. In January 2015, ISU informed Maher that her financial account was in default and there was a hold on her transcript. Maher's attorney contacted ISU, who informed her

---

[1] Maher would have accepted a move to another building in Frederiksen Court or another on-campus apartment. She had not purchased a meal plan for the 2014–2015 year because her apartment had a kitchen. She did not want to live in a converted den because she was uncomfortable being with strangers.

[2] Maher declined the single-bed option because she wanted to stay with her roommate. She declined the converted den because she was uncomfortable around strangers after her assault. She declined the hotel because it was temporary.

[3] Kelley believed that ISU should have moved Whetstone instead of Maher at this time. She also advocated that ISU move him after she completed her investigation, but ISU did not.

attorney that Maher owed ISU $119.15. ISU wrote off the balance and apologized to Maher. Maher was then able to obtain her transcript.

In July 2015, an ALJ found that Whetstone violated the Code of Student Conduct prohibition on sexual assault and expelled Whetstone. Whetstone appealed this decision to ISU's President, who affirmed it. He appealed this decision to the Iowa Board of Regents, who affirmed it as well. On September 29, 2016, Whetstone pled guilty to assault with intent to commit sexual abuse, a lesser crime than third-degree sexual abuse.

Whetstone did not sexually harass or assault Maher after the initial assault. Maher and Whetstone never had direct contact after he assaulted her. Before Maher disclosed Whetstone's name, Whetstone told a mutual friend he would bring charges against Maher if she reported him. Whetstone stayed at ISU for the entire fall 2014 semester. He transferred to the University of Northern Iowa for the spring 2015 semester.

On September 9, 2016, Maher filed a Petition against ISU in the Iowa District Court in and for Story County, seeking (1) certification that ISU acted within the scope of its employment under Iowa Code § 669.5 (First Cause of Action) and (2) damages resulting from ISU's alleged deliberate indifference to its duty to protect Maher as a victim of sexual assault in violation of 20 U.S.C. § 1681(a), ("Title IX claim") (Second Cause of Action).[4] Petition 4–11, ECF No. [1]. ISU removed the case to this Court on October 26, 2016, based on federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Defendant answered, denying Maher's claims and asserting the affirmative defenses of prompt and effective action under Title IX, intervening acts of third parties, foreseeability, superseding cause, no causal link, no special relationship/no duty, sovereign

---

[4] In her brief, Maher has indicated that she is withdrawing her First Cause of Action. Pl.'s Br. 15, ECF No. [43], but she has not filed an Amended Complaint not containing her First Cause of Action. Accordingly, the Court dismisses the First Cause of Action with prejudice and orders that judgment be entered in ISU's favor with respect to that claim.

immunity, sole fault of a non-party, failure to exhaust, failure to state a claim, and failure to mitigate damages. Answer, ECF No. [2]. On October 6, 2017, ISU sought leave to file an Amended Answer to add the affirmative defense of statute of limitations, which the Court granted over Maher's resistance. Order, ECF No. [35].

## III. LAW AND ANALYSIS

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). ISU agrees that it falls within the coverage of this provision as it receives federal financial assistance. Where, as here, Maher bases her complaint on peer-to-peer harassment, ISU would be liable in damages only if it was "'(1) deliberately indifferent (2) to known acts of discrimination (3) which occur[ed] under its control.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (internal quotation marks omitted) (quoting *Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003)). Additionally, the discrimination must be "so severe, pervasive and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school." *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 650 (1999).

### Statute of Limitations

Title IX does not have its own statute of limitations, so courts use the state's personal injury statute of limitations for Title IX claims. *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011). Iowa has a two-year statute of limitations period. Iowa Code § 614.1(2). Thus, the statute of limitations on Title IX claims in Iowa is two years. However, federal law governs when a claim accrues. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015).

The parties dispute which standard the Court should use to determine when Maher's claim accrued. ISU argues a claim accrues when a plaintiff knew or should have known of the alleged deliberately indifferent act. *See Moore v. Temple Univ.*, 674 F. App'x 239, 241 (3d Cir. 2017); *King-White*, 803 F.3d at 762; *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006); *Samuelson v. Or. State Univ.*, 162 F. Supp. 3d 1123, 1134 (D. Or. 2016).[5] Maher argues a claim accrues when a plaintiff can file suit and obtain relief. *See Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016). The Court concludes that in this case, there is no difference in when Maher's claim accrued, regardless of which linguistic formulation of the standard the Court applies. The "can file suit and obtain relief" standard concerns the moment that a plaintiff can file a lawsuit regarding the discriminatory incident.[6] *Id.* ("At that point—and not before—he can file a suit for constructive discharge. So only at that point—and not before—does he have a 'complete and present' cause of action."). In this case, the moment Maher could file a lawsuit is the same moment she learned of ISU's alleged deliberately indifferent actions.

Maher's Title IX claim arose when she knew ISU was "(1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." *Culver-Stockton Coll.*, 865 F.3d at 1057 (quoting *Ostrander*, 341 F.3d at 750).

ISU argues that Maher's Title IX claim is time barred because she claims the deliberate indifference began in the spring of 2014, which is approximately six months outside the limitations

---

[5] Maher argues that the cases ISU cites in support of its time-of-accrual argument are distinguishable because the plaintiffs' claims in those cases accrued years before they sued. While this is a factual difference between these cases, it does not affect the fact that this is the standard courts apply to determine when a cause of action accrues. However, not every case applying this standard involves a significant time gap. *See Moore*, 674 F. App'x at 241 (70 days).

[6] The Court notes that it does not interpret the phrase "and obtain relief" to mean that the statute of limitations begins to run when a plaintiff has a meritorious claim as Maher urges. Such a rule would lead to the illogical situation where the statute of limitations would bar a meritorious claim, but it would not bar an unmeritorious claim with similar facts. Surely, the statute of limitations applies equally to meritorious and unmeritorious claims. Such an interpretation would in essence vitiate the statute of limitations and the Court is not inclined to accept such an interpretation.

period.[7] ISU asserts Maher knew of all of ISU's remedial actions, and almost all of them occurred before September 9, 2014. ISU contends that the only action that occurred during the limitations period is the hold on Maher's transcript and this action is not the focus of Maher's claim. ISU argues that the continuing violation theory does not apply to Title IX cases. ISU contends that the Iowa Tort Claims Act statute of limitations does not apply to Title IX cases.

Maher argues that her Title IX cause of action did not accrue until September 19, 2014, when Kelley issued her report finding that Whetstone violated ISU's Code of Student Conduct prohibiting sexual assault, but ISU still refused to move Whetstone or provide Maher with acceptable alternative housing arrangements. Maher argues that ISU's discrimination against her began when it asked her to move instead of her male attacker. Maher argues that this was the date ISU's response to her assault became deliberately indifferent. Maher asserts that this was the point ISU denied her the rights it provided to Whetstone: he was able to stay in his apartment and continue his education, but she could not continue her education with him living so close.

Maher's Title IX housing claim accrued on August 20, 2014. This was the first day ISU knew of the housing issue, presented Maher with housing options she found inadequate, chose not to present her with additional housing arrangements, and refused to move Whetstone. ISU knew that Whetstone had sexually assaulted Maher in the past, that Whetstone lived near her, and that Maher was contending that his continued presence made it more uncomfortable for Maher and made it more difficult for her to continue her education. Maher's and Whetstone's housing were

---

[7] ISU argues that the Court must view the Title IX claim in light of ISU's total response to Maher's complaint and that ISU's response began in the spring of 2014, when Maher first notified ISU of the assault. ISU contends that it reacted to other aspects of Maher's complaint by investigating the assault, bringing Maher to the hospital and conducting a rape examination, providing her with counseling and advocacy services, imposing a no-contact order, allowing Maher to withdraw from ISU and its housing in the spring and fall 2014 semesters without penalty, and adequately addressing all other issues that arose. ISU further contends that Maher cannot unbundle ISU's response and focus only on ISU's handling of the housing situation at the time of the 2014 fall semester. Because the Court finds that the Title IX claim is not timely even if focused on the fall 2014 housing situation, the Court does not decide the "unbundling" question asserted by ISU.

under ISU's control. These facts arose on August 20, 2014, and are sufficient to bring a claim for deliberate indifference based on ISU's housing decisions.

Maher's argument that ISU's deliberate indifference began on September 19, 2014, the day Kelley issued her report finding Whetstone had violated ISU's Code of Student Conduct provision against sexual assault, is unavailing. Maher argues September 19 was the day ISU's actions became severe enough to support her claim because that was the day ISU determined that Whetstone had raped Maher, but still chose to do nothing. However, ISU offered Maher alternative housing and decided not to move Whetstone or offer Maher other accommodations on August 20, 2014.[8] This was the day ISU's alleged discrimination began, and the day that ISU was allegedly deliberately indifferent to its own discrimination. It was the day ISU made the choice Maher claims discriminated against her based on her sex, which ultimately deprived her of her educational opportunities. It was ISU's handling of the housing situation, and not the Kelley report, that forms the basis of Maher's claim that she was deprived of her educational opportunities. Thus, all of the elements to Maher's Title IX claim existed on August 20, 2014, when ISU declined to move Whetstone or offer Maher additional alternative housing, and not when Kelley issued her report. Maher's Title IX claim is time barred because it accrued on August 20, 2014, more than two years after she filed this lawsuit on September 9, 2016. However, even if Maher's claim was timely, it would not survive summary judgment.

### Title IX Claim

To succeed on her Title IX claim, Maher must show ISU was "'(1) deliberately indifferent (2) to known acts of discrimination (3) which occur[ed] under its control.'" *Culver-Stockton Coll.*,

---

[8] Maher argues, "A complete and present cause of action accrued in this case on September 19, 2014 when Iowa State University allowed Whetstone to stay in his apartment while Maher suffered from his presence and couldn't complete her studies." Pl.'s Br. 11, ECF No. [43]. These facts were present on both August 20 and September 19.

865 F.3d at 1057 (internal quotation marks omitted) (quoting *Ostrander*, 341 F.3d at 750). ISU does not argue that Maher's housing was outside of its control.

## Deliberate Indifference

A funding recipient is deliberately indifferent if it responds to student-on-student harassment in a manner that is clearly unreasonable in light of the known circumstances. *Davis*, 526 U.S. at 648–49. "[T]he funding recipient can be held liable only for its own misconduct; it cannot be held vicariously liable for the misconduct of others." *Shank v. Carleton Coll.*, 232 F. Supp. 2d 1100, 1108–09 (D. Minn. 2017) (quoting *Davis*, 526 U.S. at 640–41). Recipients are not deliberately indifferent simply because they do not comply with a victim's particular remedial demands. *Id.* at 648.

ISU argues it was not deliberately indifferent to Maher's housing issue because it offered her several alternatives. ISU offered to move Maher into a single-person emergency room, a converted den, or into the Memorial Union Hotel, but she rejected these offers. ISU contends that Title IX does not obligate it to accept Maher's particular remedial demands. ISU argues that declining to move Whetstone forcibly to another apartment before ISU found him responsible for Maher's sexual assault is not deliberate indifference simply because that is what Maher wanted. Title IX permitted ISU to consider Whetstone's rights before it acted.

Maher argues that ISU's alternative housing options were insufficient because they were temporary, required her to buy a meal plan and live in a room full of strangers, or separated her from her roommate. Maher argues that ISU should have moved Whetstone after Kelley found that he sexually assaulted Maher. Maher contends that ISU was deliberately indifferent to the effect on Maher of seeing Whetstone on campus.

ISU was not deliberately indifferent to Maher's housing issue. The parties agree that ISU offered to move Maher into a single-person emergency room, a converted den, or into the Memorial Union Hotel. These options would have solved her housing problem, but she opted not to take them. Maher's preferences against living with strangers, living in a temporary hotel room, or towards staying with her roommate do not make these alternatives "clearly unreasonable." Nor does Maher's dissatisfaction with these options make ISU deliberately indifferent. *See Ostrander*, 341 F.3d at 751. In Maher's opinion, these housing options might have been inferior to her apartment in Frederiksen Court, but they were not clearly unreasonable. While there may have been other ways for ISU to have handled this unfortunate sequence of events, such possible options do not render ISU's actions deliberately indifferent. ISU responded to Maher's complaint by offering viable housing alternatives, which is enough to save it from Title IX liability.

Moreover, ISU's refusal to move Whetstone was not clearly unreasonable or deliberate indifference. ISU refused to move Whetstone because he had procedural rights that ISU had to respect. Whetstone had a right to a hearing on the merits of his charges, which he had not received as of September 9, 2014. *See* Foreman Dep. 7:4–17, ECF No. [40-3]. Title IX does not require a funding recipient to expose itself to constitutional or statutory liability when complying with Title IX. *Davis*, 526 U.S. at 649. Kelley's report was ISU's basis for charging Whetstone with a violation of ISU's policy; it was not ISU's formal finding that he was responsible for violating the policy.

If the Court does consider ISU's overall response to Maher's complaint, as ISU argues the Court should, ISU was not deliberately indifferent. ISU immediately sent a police officer to Maher, got her medical assistance and a rape examination, and informed her of the victim assistance options available to her. ISU administrators met with Maher and her family many times to

determine her best course of action and let her withdraw from classes and her housing contract without penalty. Both Kelley and ISU police investigated the assault and charged Whetstone. Although ISU's investigation took several months, that was because it did not know who assaulted Maher until after the students had left for the semester. They both moved forward with the charges until ISU found him responsible and he pled guilty. During this time, ISU assessed whether Whetstone was a threat to Maher, determined he was not, and imposed a no-contact order for Maher and her roommate. These are all responses designed to help Maher. ISU's response was not clearly unreasonable, nor did ISU ignore Maher's report. It responded in a way that it felt balanced Maher's rights with Whetstone's rights. Maher's Title IX claim fails because ISU was not deliberately indifferent to Maher's alleged known acts of discrimination.

**Severe, Pervasive, and Objectively Offensive Discrimination**

To satisfy the discrimination element, ISU's alleged deliberate indifference must have "subjected" Maher to discrimination that is "'so severe, pervasive, and objectively offensive that it can be said to deprive [her] of access to the educational opportunities or benefits provided by the school.'" *Culver-Stockton Coll.*, 865 F.3d at 1057 (quoting *Davis*, 526 U.S. at 650). "[T]he deliberate indifference must, at a minimum, cause [Maher] to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 645 (internal quotation marks omitted).

ISU contends that one instance of sexual assault or harassment is insufficient to support a harassment claim under Supreme Court and Eighth Circuit case law; it must be pervasive. ISU argues Maher did not suffer any post-assault harassment, thus its alleged indifference to her report did not cause any harassment. ISU argues that Whetstone's proximity to Maher did not contribute to a hostile environment because it was only mental and emotional distress caused by Maher's pre-notice sexual assault. Title IX does not require it to remedy the effects of past harassment; it is

only liable for harassment that its deliberate indifference causes. ISU contends Maher needed to show some "systemic effect" or pervasive harassment to succeed.

Maher argues that ISU discriminated against her when it presented her with the option of either continuing to live near her attacker or moving to an inferior living situation, but did not require her male attacker to move. Maher argues she suffered PTSD-like symptoms every time she saw Whetstone, and ISU's refusal to offer her appropriate housing or to move Whetstone caused this vulnerability. Maher asserts these symptoms caused her to miss class and fall behind in her studies. Maher contends living close to Whetstone increased the likelihood of seeing Whetstone, and the disruption that caused. Maher argues that she did not have to suffer post-assault harassment to succeed on her Title IX claim; ISU's discrimination against her is enough. She argues that *K.T. v. Culver-Stockton College* is distinguishable.[9]

Based on the summary judgment record, the Court concludes that Maher has not demonstrated a genuine issue of material fact as to whether ISU engaged in severe, pervasive, and objectively offensive discrimination against Maher because of her sex.

---

[9] The Court agrees with Maher that *Culver-Stockton* is factually distinguishable. It involved a student who visited campus, was sexually assaulted, and then left.

**CONCLUSION AND ORDER**

For the reasons outlined above, the Court **grants** Iowa State University's Motion for Summary Judgment as to both claims. ECF No. [40]. The Clerk shall dismiss the Complaint with prejudice.

IT IS SO ORDERED.

This 13th day of February, 2018.

Helen C. Adams
Chief U.S. Magistrate Judge